This is a termination of parental rights case.
Following ore tenus proceedings the trial court permanently terminated the parental rights of the mother and father in their two sons. Permanent legal custody of the children was placed with the Alabama Department of Human Resources (DHR).
Only the mother appeals. She asserts that there was insufficient evidence to justify the termination of her parental rights and that the court failed to rule out viable alternatives before terminating her parental rights.
The decision of a trial court based upon evidence presented at an ore tenus hearing is presumed correct and will not be disturbed on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. McConathy v. State Dept.of Human Resources, 510 So.2d 269 (Ala.Civ.App. 1987). When confronted with a petition to terminate one's parental rights, the court should apply a two-pronged test. The court must first decide if clear and convincing evidence shows that the child is dependent under § 26-18-7(a), Code 1975. If the child is "dependent," the court must decide whether there are viable alternatives to the termination of the parent's rights.Burroughs v. State Dept. of *Page 402 Human Resources, 516 So.2d 676 (Ala.Civ.App. 1987). The parents of a child have a prima facie right to the custody and control of their child. However, this right must yield when clear and convincing evidence supports the conclusion that parental custody is detrimental to the best interests of the child. Burroughs.
In § 26-18-7(a), Code 1975, the legislature has outlined several matters for the court to consider when determining whether a parent is unable or unwilling to properly discharge his or her parental responsibilities. If a child is not in the physical custody of its parent, the court shall also consider the additional factors enumerated in § 26-18-7(b). The court is not limited to these factors.
Of the two sons involved in these proceedings, the elder son was born in 1984. He was declared dependent and placed in a foster home when he was approximately three months old. He was returned to the mother's custody after two months but was again removed after a DHR social worker determined that the parents' abuse of alcohol and the father's physical abuse of the mother had rendered them unable to meet their child's physical and emotional needs. The mother and father were subsequently divorced.
In August of 1984 the mother petitioned the court to return custody of the child to her. One day prior to a hearing set on her petition, the mother filed a motion to continue the proceedings because she was an in-patient at an alcohol abuse treatment facility.
The record is less than adequate to specifically detail the events in the life of the mother occurring between September 1984 until approximately 1987. However, it is clear that DHR retained legal custody of her son born in 1984, but for sporadic periods of time the mother was allowed to exercise physical custody. Her younger son was born in April 1985. The reports of the DHR social worker indicate that, after physical custody of the sons was returned to the mother, her excessive alcohol consumption would result in a petition by DHR to have the sons returned to DHR or the mother would call DHR and voluntarily relinquish custody to DHR.
In February 1987 DHR petitioned to be relieved of the custody of the child born in 1984. In May 1987 the mother traveled to Florida in order to allow the children to visit with their father, who had recently been released from prison. In September 1987 the mother called DHR from a lounge where she had been drinking alcohol. The mother stated that she could not manage caring for the sons and requested that their physical custody be placed with DHR. During September through November 1987, March 1988, and April 1989, the mother was admitted to a hospital for "alcohol withdrawal," "alcohol intoxication," "alcohol abuse," or "acute intoxication." In December 1987 the mother was arrested for public intoxication. The problems that the mother has encountered from her inability to stop her alcohol consumption permeate the entire record.
In November 1987 the mother entered a "service agreement" with DHR, in conjunction with a mental health counselor, wherein the mother agreed to maintain sobriety, maintain weekly contact with the mental health center, attend three Alcoholics Anonymous meetings per week, seek employment, and establish a household separate from her parents.
In January 1988 the mother entered an inpatient alcohol abuse treatment program. Another service agreement was made between the mother and DHR, with the mother agreeing to maintain "sobriety." The mother and two sons were reunited in January 1989, but within a month DHR received a report that the mother was drinking and that the children had been absent from school. Since September 1987 the sons have resided in the same foster home, except for the one month with their mother.
One of DHR's reports indicates that the two sons have been placed in foster homes on at least four separate occasions. With one possible exception, the removal of the sons was a direct result of the mother's continued abuse of alcohol and her inability *Page 403 
to furnish them with a stable home environment.
The attempts by DHR to allow the mother limited visitation with her sons after their removal have met with limited success because the mother consistently failed to keep the appointments.
Section 26-18-7(a)(2) states that the "[e]motional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol . . . of such duration or nature as to render the parent unable to care for needs of the child," is a ground for determining whether termination of parental rights is warranted. Wood v. State Dept. of Human Resources,523 So.2d 129 (Ala.Civ.App. 1988). Section 26-18-7(a)(6) states that when "reasonable efforts by [DHR] . . . leading toward the rehabilitation of the parents have failed," termination is warranted. Wood. DHR's involvement with this mother began approximately six years prior to the termination proceedings below. Throughout DHR's involvement the mother has been advised of the consequences of her alcohol abuse on both the care of her two sons and on her chances of ever regaining custody of her sons. There are numerous instances of alcohol abuse by the mother and clear and convincing evidence of her inability or unwillingness to stop her abuse of alcohol. She has been admitted twice to in-patient alcohol detoxification programs; she has admitted herself to the hospital for conditions diagnosed as "acute alcoholism," and a pattern of alcohol abuse is manifest. A parent's situation need not be shown to be "permanent;" rather it is sufficient to prove that the condition of the parent has been of such duration or nature as to render the parent unable or unwilling to care for the minimum needs of her children. See McCulloch v. State Dept. ofHuman Resources, 536 So.2d 68 (Ala.Civ.App. 1988).
The evidence of the mother's inability or unwillingness to control her abuse of alcohol shows that she has not adjusted her circumstances or lifestyle to meet the needs of the children in accordance with agreements reached with DHR.Wood; § 26-18-7(b)(4).
Since DHR became involved with the mother, there have been numerous attempts to assist the mother in the treatment of her alcohol abuse problem and to provide proper care for her two sons. DHR has offered the mother the services and assistance it deemed necessary under the circumstances, such as: "homemaker assistance," where a DHR worker comes into the home and tries to teach and assist the mother in the proper care of children; mental health treatment and counseling, both in-patient alcohol detoxification programs and follow-up outpatient therapy; providing shelter through a local women's half-way house or the federal "section 8 housing" program; providing food through the food stamp program and direct financial assistance; Alcoholics Anonymous and Parents Anonymous, support groups intended to help the mother cope with her problems; and day care placement for the sons when the mother was employed.
The evidence indicates very clearly that DHR has made significant and repeated efforts to develop a plan to assist the mother in controlling her alcoholism and thereafter to return the sons to her custody. These efforts were ignored by, or were unsuccessful with, the mother; after more than five years of effort by DHR the mother was apparently unable or unwilling to make the type and degree of commitment needed to remedy her problems. The two sons have been moved back and forth from foster care to their mother's custody. At some point it becomes necessary to say that the children require a morepermanent placement. The evidence is clear and convincing that that these children are "dependent." The attempts to find and use viable alternatives have not been fruitful. The court below determined that termination was necessary and we affirm this judgment.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and *Page 404 
this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.