ROBERTSON, Presiding Judge.
These appeals involve the termination of parental rights.
On July 23, 1991, the Department of Human Resources (DHR) filed petitions to terminate the parental rights of R.L., mother of L.L., C.L., and B.L.; and J.J., the father of C.L. and B.L.; and, T.C., the father of L.L. At the time of trial, the children were ages six, five, and four years respectively.
Following an ore tenus proceeding, held in April 1992, the trial court terminated the parental rights of R.L. and J.J. to their two children C.L. and B.L. The trial court also terminated the parental rights of R.L. and T.C. to their child, L.L.
R.L. and J.J. both argue on appeal that there was insufficient evidence to justify termination of their parental rights.
We note at the outset that, since this evidence was presented ore tenus, the trial court’s decision is presumed correct and will not be disturbed on appeal unless it is *355 so unsupported by the evidence as to be plainly and palpably wrong. D.G. v. State Department of Human Resources, 569 So.2d 400 (Ala.Civ.App.1990).
Also, in situations where the state is a party and is seeking to terminate parental rights, there must be a determination from clear and convincing evidence that the children are dependent. Hayes v. State Department of Human Resources, 563 So.2d 1035 (Ala.Civ.App.1990). Second, the court must consider and reject all other alternatives to termination before it can conclude that termination is in the best interests of the children. Hayes.
The record reflects that DHR has been involved with R.L. and the minor children since January 1989. DHR claimed that R.L. left the children alone at home unsupervised, dirty, and without food; that B.L., ten months old at the time of removal, could not sit up without aid as a result of improper nutrition and stimulation; and, that all three children had diarrhea. In March 1989, the children were alleged to be dependent and were placed in the temporary custody of DHR, and in May 1989, the children were adjudicated dependent and remained in the custody of DHR. The record reflects that prior to the removal of the children in March, R.L. was receiving $300 per month in food stamps, $147 from the Aid to Dependent Children Assistance Program, rental and utility assistance from Section Eight Housing, and various other services. The children have been in the custody of DHR since March 1989. In September 1990, DHR filed a report to the court which stated that DHR planned to continue to work with R.L. for six months to determine whether R.L. could maintain a home and provide for the emotional and physical needs of the children. In October 1991, DHR reported to the court that R.L. had not made “sufficient progress toward meeting her own needs much less the needs of the children.” R.L. entered into a service agreement with DHR on January 30, 1991, which provided that R.L. would, among other things, attend parenting classes, provide income verification, establish and maintain a home, attend counseling services provided through mental health, and actively seek employment. In March 1991, DHR filed another report to the court stating that R.L. had failed to meet the terms of the service agreement, and that the children had been in foster care for three years and were in need of a stable, permanent home. In July 1991, DHR filed petitions for the termination of parental rights of R.L., T.C., and J.J.
In October 1991, an ore tenus proceeding was conducted wherein R.L. was present. T.C. did not appear after being served through certified publication and, although J.J. was, at the time of the proceeding, incarcerated for possession of cocaine, he was released and present for the proceeding.
Patsy Liveoak, a caseworker with DHR, testified that DHR initially became involved in this case in January 1989, because DHR claimed that the children were being left unsupervised and that the physical needs of the children were not being met. She testified that the children had been in foster care since March 1989. Live-oak testified that initially R.L. had an apartment and a job, but that she quit the job because she did not like it and that eventually she lost her apartment. Live-oak testified that from May 1990 until August 1990, R.L. had five different residences and three different employers. Further, she stated that R.L.’s visits with the children were regular the first six months but had not been regular after that time.
Liveoak testified that the three children had been placed in foster care together and are adoptable together. Liveoak testified that she understood that at the time of trial R.L. was employed with a certain company in Dothan, but that no verification was done on this. Also, Liveoak testified that she had had difficulty verifying R.L.’s present address.
R.L. testified that, at the time of trial, she was 23 years old; that she completed the ninth grade; and that she worked for a company in Dothan. R.L. testified that she does not have a drug problem; that she drinks beer; but that she does not abuse *356 alcohol. At trial, R.L. testified that she had a place to live; that she paid $150 per month for rent; that her utilities were in the name of her cousin, and that the cousin paid the utility bills for her. Further she testified that from May 1990, until August 1990, she had had three different jobs and had lived in four different places.
Also, she testified that she had lived with J.J. for five years after L.L. was born, and that after the children were taken into foster care, J.J. had not contacted the children. R.L. testified that J.J. was told that the children were removed from R.L. while he was incarcerated.
The trial court continued the case for six months, until April 1, 1992, in order to give J.J. an opportunity to be released from jail for a few months and show the trial court why his parental rights should not be terminated.
On April 1, 1992, J.J. testified that he is the father of C.L. and B.L. He testified that he dropped out of school in the ninth grade and that he was currently incarcerated for the unlawful possession of a controlled substance. He testified that he had not paid child support for his children. Before he was incarcerated he worked at a construction company and was paid $6 per hour. J.J. testified that, in February 1985, he was convicted of theft of property; that in April 1988, he was convicted for failure to appear because of an improper muffler and driving with a suspended license; and that in November 1988, he was sentenced to 188 days in jail for disorderly conduct. He testified that he was released from jail in December 1991, and was back in jail in January 1992, because he tested positive for alcohol while on parole. Also, he testified that he does not deny using both alcohol and cocaine during the time that he was out on parole. He testified that he had been in jail since March 1989, and had been out of jail for a period of three months in a three-year period. Before he was incarcerated he would see the children once or twice a month. He testified that his anticipated prison release date was June 22, 1992, and that upon release he planned to live with his mother and once again work for the construction company earning $6.50 per hour. He testified that the children would not be able to live at his mother’s home, but that he planned to borrow money from his employer and get his own .place to live. He testified that he was currently enrolled in a substance abuse program in prison, which he would complete in May 1992.
At the April 1, 1992, trial, Patsy Liveoak testified that in January 1992, R.L. was living in a trailer park with a Mr. Henderson, his first wife, and her eighteen-year-old daughter. She testified that she never received verification that R.L. worked for the company in Dothan. R.L. had told her that she was working at a restaurant and that she had worked there approximately two weeks. Liveoak testified that R.L. had not maintained regular contact with her, and that in the past six months R.L. had visited the children eight times, although she was allowed to visit twice a month. She testified that the service agreement between DHR and R.L. provided that R.L. would attend parenting classes, but that R.L. had attended only one session, and that R.L. had not provided Liveoak with income verification as required by the agreement. She did testify, however, that R.L. had attended cooking school and had completed it.
Liveoak testified that she was unable to ascertain any relative resources for the children, and that, based on R.L.’s conduct over the past six months, R.L. was not likely to change in the foreseeable future.
After thoroughly reviewing the record, this court cannot hold that the trial court’s decision in terminating the parental rights of R.L. and J.J. was so unsupported by the evidence so as to be plainly and palpably wrong. Accordingly, the judgment is due to be affirmed.
AFFIRMED.
THIGPEN and RUSSELL, JJ., concur.