This is a termination of parental rights case.
In July 1995, the Calhoun County Department of Human Resources (DHR) filed petitions seeking to terminate the parental rights of the natural parents to their six children. DHR alleged, among other things, that the children were dependent, and that the parents were unable to properly care for the children. Following ore tenus proceedings in November 1995, the trial court granted DHR's petitions, finding that the children were neglected or dependent, and that no viable alternatives to termination existed. The court further found that all reasonable efforts had been made to reunite the children with their family, and that it would not be in their best interests to return them to their family. Only the mother appeals. She does not challenge the finding that the children are dependent. She argues only that there exists at least one viable alternative to the termination of her parental rights.
Initially, we note that a trial court's judgment in proceedings to terminate parental rights is presumed to be correct when it is based on ore tenus evidence, and that it will not be set aside unless it is plainly and palpably wrong.D.G. v. State Dep't of Human Resources, 569 So.2d 400
(Ala.Civ.App. 1990). Furthermore, in termination proceedings, the trial court must apply a two-pronged test to terminate parental rights when the State is the petitioner. Ex parte Beasley,564 So.2d 950 (Ala. 1990). First, the trial court must determine from clear and convincing evidence that the child is dependent, *Page 347 
and, second, the court must determine that there exists no remedy less drastic than the termination of parental rights.Ex parte Beasley, 564 So.2d 950; see also B.O. v. Dep't ofHuman Resources, 628 So.2d 805 (Ala.Civ.App. 1993).
The termination of parental rights is an extreme matter and should not be considered lightly. "Parental rights are indeed cherished and deserve the law's utmost protection against unwarranted interference." Ex parte Beasley, 564 So.2d at 954. The law is also clear that a natural parent has a prima facie right to custody; however, that right can be overcome by clear and convincing evidence that removal from the parent's custody is in the child's best interests. East v. Meadows,529 So.2d 1010 (Ala.Civ.App. 1988). In determining a child's best interests, the trial court must consider many factors, including the physical, financial, and mental ability of the parent to care for the child. J.L.B. v. State Dep't of HumanResources, 608 So.2d 1367 (Ala.Civ.App. 1992).
Bobby Malone, a certified counselor and therapist, testified that he began counseling two of the children in December 1993, after they had been placed in foster care and were having some behavioral problems. He testified that he had continued to counsel them, and he opined that they had improved since being placed in foster care because they obtained stability in their lives. He also stated that the children wanted to be adopted, and that the mother had been afforded many opportunities to rehabilitate herself from her alcohol addiction problem.
Calvin Overstreet, a certified addictions counselor, testified that he began treating the mother for her alcohol dependency problem in 1993. He stated, however, that he discontinued his relationship with her because, he says, she would not commit to follow through with long-term treatment. He testified that after she was released from one inpatient program, she refused to attend meetings and began drinking again. He also stated that the mother's home environment, including her contact with her sister and boyfriend, contributed to the mother's inability to remain abstinent.
The children's maternal grandmother testified that she could accept placement of the children; however, her testimony also revealed that she is a diabetic, that she lives in a two-bedroom house, and that she had not indicated to DHR or anyone else that she was able or desired to take care of the children. She also testified that DHR previously had had custody of her own children and had placed them in foster care while she served a prison term for 18 months.
Paula Freeman, a DHR social worker, testified that the children were currently in foster care, and that they had been placed in foster care on three separate occasions. She testified that the children were placed in foster care because they had been left alone at home, and on one occasion, the five-year-old was found wandering in the street at 1:00 a.m. The social worker testified that the mother had been provided opportunities for parenting classes and treatment for her alcohol addiction, but that she had not successfully completed any program.
It is noteworthy that the guardian ad litem recommended that the mother's parental rights be terminated. He stated that it was likely that otherwise, the children would remain in long-term foster care, and that the children were "presently scattered in four different foster homes, so there should not be any disruptive effect if adoptions take place." He stated that having the possibility of adoption would be in the children's best interests.
The trial court may consider several factors in determining whether parents are unable to properly care for their children, and whether they are unable or unwilling to discharge their responsibilities to and for their children, including:
 "(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for the needs of the child;
". . . .
 "(6) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading *Page 348 
toward rehabilitation of the parents have failed."
Ala. Code 1975, § 26-18-7(a).
Further detailing the facts of this case would serve no purpose. We have carefully reviewed the record in light of the above-stated presumptions and principles, and we find that there was clear and convincing evidence to support the trial court's judgment terminating the mother's parental rights. The record is replete with evidence regarding the mother's alcohol abuse, DHR's attempts to assist her in rehabilitative opportunities, and her inability or unwillingness to avail herself of those opportunities. It appears from the record that there were no viable alternatives to termination, and that the mother has failed to produce any evidence that such exists. Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and MONROE, J., concur.