In 1992, M.W. (the "mother") voluntarily relinquished custody of her then 3-year-old son, R.C.W. (the "child"), to the Houston County Department of Human Resources. The child, who has been diagnosed with attention deficit hyperactive disorder (ADHD) complicated by depression, was placed in foster care, where he remained until December 1994, when he was placed with paternal relatives in South Carolina. The paternal relatives cared for the child until April 1996, when he was again placed in foster care in Alabama because the paternal relatives could no longer handle his aggressive behavior.
In December 1996, the child was placed with the mother in Florida, under the supervision of the Florida agency equivalent to our DHR, where he remained until December 5, 1997, when the mother voluntarily returned him to DHR because she was homeless. She returned to Florida for a short time, and then, upon her return to Alabama, began residing temporarily with her mother. The child was returned to her custody on December 25, 1997. However, DHR removed the child from the mother's custody again in February 1998, because the mother had yet to find permanent housing, had fled her mother's house several times to avoid verbal abuse, and had left the child with the maternal grandmother on those occasions; her leaving him there had resulted in the child's being physically abused by his older brother.
In October 1998, the mother requested that the child be returned to her; this request was apparently denied. In December 1998, the mother was granted visitation rights. In January 1999, DHR filed a petition to terminate the parental rights of both the mother and the father. After three continuances, the trial court held a final hearing on January 11, 2000. It terminated the parental rights of both parents on January 14, 2000. The mother appeals.
 "The right to maintain family integrity is a fundamental right protected by the due process requirements of the Constitution. Pursuant to this right, Alabama courts recognize a presumption that parental custody will be in the best interests of a child. This prima facie right of a parent to the custody of his or her child can only be overcome by clear and convincing evidence that permanent removal from the parent's custody would be in the child's best interest . . . . In making that determination, the court must consider whether the parent is physically, financially, and mentally able to care for the child. If the court finds from clear and convincing evidence that the parent is unable or unwilling to discharge his or her responsibilities to and for the child, his or her parental rights can then be terminated, pursuant to [Ala. Code 1975,] § 26-18-7(a). . . ."
Bowman v. State Dep't of Human Resources, 534 So.2d 304, 305
(Ala.Civ.App. 1988) (citations omitted). The trial court's decision to terminate parental rights, which is based on evidence presented ore tenus, is presumed correct and will be *Page 486 
reversed only if the record demonstrates that the decision is unsupported by the evidence and is plainly and palpably wrong. R.B. v. StateDep't of Human Resources, 669 So.2d 187 (Ala.Civ.App. 1995).
To terminate parental rights, the trial court must first determine from clear and convincing evidence that the child is dependent. S.F. v. Department of Human Resources, 680 So.2d 346
(Ala.Civ.App. 1996). The trial court must then determine that there exists no alternative to termination. L.A.G. v State Dep'tof Human Resources, 681 So.2d 596 (Ala.Civ.App. 1996).
A trial court may terminate parental rights when "the parents of [the] child are unable or unwilling to discharge their responsibilities to and for the child, or . . . the conduct or condition of the parents is such as to render them unable to properly care for the child and . . . such conduct or condition is unlikely to change in the foreseeable future." Ala. Code 1975, §26-18-7(a). In making the difficult decision to terminate parental rights, the trial court is required to consider, among other things, the excessive use or abuse of alcohol by a parent,id., and whether "reasonable efforts by [DHR] . . . leading toward the rehabilitation of the parents have failed." Ala. Code 1975, §26-18-7(a)(6). In addition, in cases like this one, where the child is no longer in the physical custody of the parents, the trial court must also consider the "[l]ack of effort by the parent to adjust his circumstances to meet the needs of the child in accordance with agreements reached . . . with [DHR]." Ala. Code 1975, § 26-18-7(b)(4).
DHR and the mother have a long history. The mother's attorney objected to much of the testimony concerning that long history at trial, arguing that the caseworker, who had been assigned the case in the summer of 1999, could not testify to facts about the agency's past dealings with the mother. The trial court properly overruled those objections, because reports compiled by DHR caseworkers are admissible evidence provided that the parties have an opportunity to cross-examine the author of the report. See Clark v. Alabama Dep't of Human Resources,523 So.2d 131, 132 (Ala.Civ.App. 1988); Lyle v. Eddy, 481 So.2d 395, 398
(Ala.Civ.App. 1985).
DHR had repeatedly urged the mother to seek counseling for her drug and alcohol problems. She had attended counseling several times in the past, but continued to have drug and alcohol problems. For example, in February 1998, when the child was last removed from her care, the mother tested positive for cocaine metabolite. At a hearing on the termination petition in October 1999, the trial court continued the case to January 2000 with the requirement that the mother attend further inpatient counseling for alcoholism. The mother was admitted into a program in late October; however, she was dismissed from the program before completing it because she violated minor rules. The child's counselor, Tami Chancey, testified at the October hearing that the mother had agreed to attend a treatment center because she knew it was required to get her son back; however, the counselor noted that the mother did not admit that she had a problem with alcohol. At the January hearing, the counselor testified that the mother minimized her rules violations, calling them silly, again signifying that she felt the process was simply a means to the end of satisfying DHR and getting her son back.
The mother continues to have a problem with alcohol. She admitted that she had received two DUI citations in the month before the final hearing. She had, however, passed several drug screens in the months before the final hearing. The mother lives with a man in a trailer owned by her brother. She was unemployed at the time of the final hearing. Although the mother has attempted to adjust her circumstances to meet the needs of the *Page 487 
child, she has not had consistent success. When she does succeed, she cannot maintain her improved lifestyle. She cannot or will not admit that alcohol is a problem in her life; without such an admission, treatment for alcoholism will fail because the mother is not seeking treatment but is instead trying to satisfy DHR.
We are not unsympathetic to the mother. She has been devoted to visitation with the child, she has attempted to do all that DHR has asked of her, and she willingly relinquished custody when she lost the ability to provide for the child, all the time intending that the child would return to her custody once she established a home and got a job, which she has not done. At some point, however, the child's need for permanency and stability must overcome the parent's good-faith but unsuccessful attempts to become a suitable parent. See D.G. v. State Dep't of HumanResources, 569 So.2d 400 (Ala.Civ.App. 1990). The child himself has communicated the desire for permanency and stability in his life, recognizing that his loving and well-meaning mother is unable to successfully parent him. The evidence supports the trial court's decision to terminate the mother's parental rights.
AFFIRMED.
Robertson, P.J., and Yates, Monroe, and Thompson, JJ., concur.