**T.W.**

v.

**CALHOUN COUNTY DEPARTMENT OF HUMAN RESOURCES.**

**N.W.**

v.

**Calhoun County Department of Human Resources.**

**2150009 and 2150057.**

Court of Civil Appeals of Alabama.

April 1, 2016.

Adrienne Michele LaBudde, Anniston, for appellant T.W.

L. Dustin Merritt of LaPlante, Merritt & Faulkner, Anniston, for appellant N.W.

Sharon E. Ficquette, chief legal counsel, and Karen P. Phillips, asst. atty. gen., Department of Human Resources, for appellee.

THOMAS, Judge.

T.W. ("the mother") and N.W. ("the father") separately appeal from a judgment of the Calhoun Juvenile Court ("the juvenile court") terminating their parental rights to J.W. ("the child").

■ At the outset, we first determine whether the father has filed a timely notice of appeal to this court. The Calhoun County Department of Human Resources ("DHR") filed a petition in the juvenile court seeking to terminate the mother's and the father's parental rights to the child on May 18, 2015. The juvenile court held a trial on August 28, 2015, at which it heard evidence ore tenus; the juvenile court entered a judgment terminating the mother's and the father's parental rights on September 1, 2015. The mother filed a motion to alter, amend, or vacate or, in the alternative, for a new trial on September 14, 2015; the father filed a postjudgment motion on September 15, 2015. The mother's postjudgment motion was denied by operation of law on September 28, 2015. *See* Rule 1(B), Ala. R. Juv. P. On September 29, 2015, the father's postjudgment motion was also denied by operation of law. *See id.*

Also on September 29, 2015, the mother filed a timely notice of appeal to this court; that appeal was assigned case number 2150009. The father filed a notice of appeal on October 15, 2015; his appeal was assigned case number 2150057.[1] Rule 28(C), Ala. R. Juv. P., provides that, in juvenile matters, "[w]ritten notice of appeal shall be filed within 14 days of the date of the entry of order of judgment appealed from...." Although the period for appealing the judgment was tolled while the father's postjudgment motion was pending, *see* Rule 4(a)(3), Ala. R.App. P., the father's notice of appeal was filed more than 14 days after September 29, 2015, the date his postjudgment motion was denied by operation of law. We recognize that Rule 4(a)(2), Ala. R.App. P., provides that,

> "[i]f a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days (2 weeks) of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires."

In the present case, however, the mother filed her notice of appeal on the same day that the father's postjudgment motion was denied by operation of law. Thus, the 14–day period during which the father could appeal following the mother's appeal ran concurrently with the 14–day period dur-

---

1. The appeals were consolidated by this court *ex mero motu* by an order dated October 20, 2015.

ing which he could appeal following the denial of his postjudgment motion. Thus, the father's notice of appeal, filed on October 15, 2015, was not timely filed. " 'An appeal shall be dismissed if the notice of appeal was not timely filed to invoke the jurisdiction of the appellate court." Rule 2(a)(1), Ala. R.App. P. We, therefore, dismiss the father's appeal.

We now address the appeal that was timely filed by the mother. In her appellate brief, the mother argues that there was not clear and convincing evidence indicating that she was unable to discharge her duties for the child and that that condition was unlikely to change. The mother also argues that there was not sufficient evidence indicating that there were no viable alternatives to the termination of her parental rights.

> " 'Our standard of review of a judgment terminating parental rights is well settled. "A juvenile court's factual findings, based on ore tenus evidence, in a judgment terminating parental rights are presumed to be correct and will not be disturbed unless they are plainly and palpably wrong." *J.C. v. State Dep't of Human Res.*, 986 So.2d 1172, 1183 (Ala. Civ.App.2007). However, a trial court's application of the law to undisputed facts is not given a presumption of correctness on appeal, and this court applies a de novo standard of review to questions of law. *See J.A. v. C.M.*, 93 So.3d 953, 954 (Ala.Civ.App.2012).'
>
> "*J.K. v. Jefferson Cnty. Dep't of Human Res.*, 114 So.3d 835, 842 (Ala.Civ.App. 2012).
>
> > " ' "To terminate parental rights, the trial court must first determine from clear and convincing evidence that the child is dependent. *S.F. v. Dep't of Human Res.*, 680 So.2d 346 (Ala.Civ.App.1996). The trial court must then determine that there exists no alternative to termination.

> *L.A.G. v. State Dep't of Human Res.*, 681 So.2d 596 (Ala.Civ.App. 1996)."
>
> " '*M.W. v. Houston Cnty. Dep't of Human Res.*, 773 So.2d 484, 485–86 (Ala. Civ.App.2000).'
>
> "*A.K. v. Henry Cnty. Dep't of Human Res.*, 84 So.3d 68, 69–70 (Ala.Civ.App. 2011)."

*A.H. v. Houston Cty. Dep't of Human Res.*, 122 So.3d 846, 849–50 (Ala.Civ.App. 2013).

We first address the mother's assertion that the juvenile court erred by concluding that DHR had presented clear and convincing evidence indicating that she was unable or unwilling to discharge her responsibilities to and for the child. Clear and convincing evidence is " '[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.' " *L.M. v. D.D.F.*, 840 So.2d 171, 179 (Ala.Civ.App.2002) (quoting § 6–11–20(b)(4), Ala.Code 1975). In determining whether to terminate parental rights, a juvenile court is required to apply a two-prong test: "(1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable alternatives to a termination of parental rights." *B.M. v. State*, 895 So.2d 319, 331 (Ala.Civ. App.2004) (citing *Ex parte Beasley*, 564 So.2d 950, 954 (Ala.1990)).

Additionally, the grounds for termination of parental rights are set out in § 12–15–319, Ala.Code 1975, which provides, in pertinent part:

> "(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that

the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:

"....

"(2) Emotional illness, mental illness, or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of a duration or nature as to render the parent unable to care for needs of the child.

"....

"(4) Conviction of and imprisonment for a felony."

The juvenile court was presented with undisputed evidence indicating that the mother and the child had tested positive for cocaine and marijuana when the child was born on November 7, 2013. The mother was convicted of child endangerment shortly thereafter and was sentenced to five years of incarceration with the Alabama Department of Corrections("DOC"). The mother testified that she had been incarcerated with DOC since November 13, 2013, initially at the Julia Tutwiler Prison for Women; however, at the time of the trial she had been moved to a work-release facility. The mother also stated that her end-of-sentence date was September 24, 2015,[2] after which, according to the mother, she would live in a halfway house in Calhoun County for six to eight weeks. The mother further testified that she had

been employed at a fast-food restaurant for seven months and earned $7.25 per hour. The mother also testified that she had completed a substance-abuse program while she was incarcerated and that she had been free of drugs for two years.

The mother also testified that she has two other children in addition to the child at issue in the present case. The mother testified that her oldest child was 10 years old and that she had not had custody of that child for 6 years. She also testified that her second child ("the second child") was born in January 2010, that the second child also had tested positive for cocaine at birth, and that she no longer had custody of the second child when the child at issue in the present case was born in November 2013.[3]

In her brief on appeal, the mother, citing *D.O. v. Calhoun County Department of Human Resources*, 859 So.2d 439, 444 (Ala.Civ.App.2003), simply argues that, because she had made substantial progress toward sobriety and employment while incarcerated, she has demonstrated that she could parent the child in the foreseeable future. However, the mother admitted at the trial that she had been incarcerated since shortly after the child's birth, that she had never visited the child, and that the child did not know her. LaTasha Hardy, the DHR caseworker assigned to this case, testified that the child had been in foster care for 22 months, his entire life. Hardy further testified that, because the mother had been incarcerated essentially since the child's birth, DHR had been unable to offer the mother services.

In summary, the juvenile court was presented with evidence demonstrating that the mother had lost custody of the child

---

2. The record indicates that the mother had earned "good time" during her incarceration that would enable her to receive an early release.

3. The record does not indicate that the mother's parental rights to the two older children had been terminated.

and the second child due to her drug use during pregnancy, *see* § 12–15–319(a)(2), and that the mother had been convicted of a felony. *See* § 12–15–319(a)(4). Moreover, although the mother has completed a substance-abuse program in prison, her ability to remain drug free has not been tested outside prison. In addition, Hardy testified that, once the mother was released from prison, DHR would require the mother to maintain sobriety and stable housing and employment for at least six months before it would even consider a plan to return the child to the mother. As this court stated in *Talladega County Department of Human Resources v. M.E.P.*, 975 So.2d 370, 374 (Ala.Civ.App.2007),

> "there is a point at which the child's need for permanency and stability will overcome the parent's rights to rehabilitation by DHR. *M.W. v. Houston County Dep't of Human Res.*, 773 So.2d 484, 487 (Ala.Civ.App.2000). The point at which the child's needs overcome the parent's right to be rehabilitated must be determined based on the facts of each individual case."

Although we agree that the mother might well have demonstrated that she has some ability, and a desire, to change upon her release from prison, we agree with the juvenile court's conclusion that DHR presented clear and convincing evidence demonstrating that the condition resulting in the mother's inability to care for the child would not change in the *foreseeable* future. Accordingly, we cannot agree with the mother that DHR did not establish that termination of her parental rights was not in the best interest of the child, who deserves a permanent placement instead of continued foster placement for a year or more while awaiting the mother's possible, but not certain, rehabilitation.

 We next turn to the mother's argument that DHR failed to prove that there existed no viable alternatives to the termination of the mother's parental rights. The mother is correct that, in addition to finding a child dependent, a juvenile court must determine that there are no viable alternatives to the termination of parental rights. *T.G. v. Houston Cty. Dep't of Human Res.*, 6 So.3d 1182, 1188 (Ala.Civ.App.2008). However, "[w]e are ever mindful that '[t]he paramount consideration in a case involving the termination of parental rights is the best interests of the children.'" *Id.* (quoting *Q.F. v. Madison Cty. Dep't of Human Res.*, 891 So.2d 330, 335 (Ala.Civ.App.2004)).

Hardy testified at the trial that she had sent letters to the mother and the father at their respective locations of incarceration requesting the names of possible relative resources; neither party responded to her letters, according to Hardy. However, Hardy testified that the mother had provided DHR the names of potential relative resources—namely, her mother and her aunt—when the child was first taken into DHR's custody. According to Hardy, S.W., the mother's mother, had a previous child-abuse/neglect report that was "indicated." Hardy further testified that DHR had also investigated V.L., the mother's aunt; that investigation revealed that V.L. had a history with the Talladega Department of Human Resources, who had once temporarily removed V.L.'s children from her custody. Therefore, neither S.W. nor V.L. could be considered as a relative resource. The mother also argues in her brief that the juvenile court could have considered S.F., the custodian of one of the mother's other children. However, the mother testified that S.F. is not related to the child, and Hardy testified that S.F. was not presented to DHR as a relative resource for the child.

Hardy further testified that DHR had investigated D.W., another of the mother's aunts. However, according to Hardy,

D.W. had initially represented to DHR in December 2013. that she and her husband were moving to the Montgomery area and that she would contact DHR as soon as they were settled. Hardy testified that D.W. did not contact DHR until July 2015, at which time D.W. had indicated that she had never moved. Hardy testified that D.W.'s explanation for the lapse in time between her contacts with DHR was that she had been hospitalized after she was shot outside her residence, that she had had to recover from that injury, and that, at the time she contacted DHR, D.W.'s husband was in the hospital with a serious illness. Hardy further testified that it was often difficult to contact D.W. and that, because of the lack of communication, she had been unsuccessful in scheduling an evaluation of D.W.'s home. Thus, DHR determined that D.W. was not a viable relative resource.

We are unconvinced by the mother's argument that DHR failed to seek out viable alternatives to the termination of the mother's parental rights. Furthermore, this court has held that a viable placement alternative is to be considered under circumstances where *continued efforts are to be made to rehabilitate the parent and to reunite the family. A.E.T. v. Limestone Cty. Dep't of Human Res.*, 49 So.3d 1212, 1219 (Ala.Civ.App.2010)(citing *D.M.P. v. State Dep't of Human Res.*, 871 So.2d 77, 94 (Ala.Civ.App.2003)(plurality opinion)). We have further held that the duty to consider those alternatives cannot serve as a bar to the termination of parental rights once it is determined that rehabilitation of the parent and reunification of the family is not likely in the foreseeable future. *A.F. v. Madison Cty. Dep't of Human Res.*, 58 So.3d 205, 214 (Ala.Civ. App.2010). At the time of the trial, the child had been in foster care for almost two years, the mother remained incarcerated for child endangerment, and it is unlikely that the mother will be able to care for the child in the foreseeable future. For these reasons, the judgment of the juvenile court terminating the mother's parental rights is affirmed.

2150009—AFFIRMED.

THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.

MOORE, J., concurs in the result, without writing.

2150057—APPEAL DISMISSED.

THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.