THOMAS, Judge,
dissenting.
Although I recognize the Department of Human Resources’ duty to make reasonable efforts to rehabilitate parents whose children have been removed from their custody, a parent must make “an effort to address his or her issues and improve his or her circumstances.” A.M.F. v. Tuscaloosa Cty. Dep’t of Human Res., 75 So.3d 1206, 1212 (Ala.Civ.App.2011). It is well settled that a juvenile court’s factual findings in a judgment terminating parental rights based on evidence presented ore tenus are presumed correct. D.P. v. Madison Cty. Dep’t of Human Res., 23 So.3d 1156, 1158 (Ala.Civ.App.2009). Furthermore, when the juvenile court has not made specific factual findings in support of its judgment, we must presume that the juvenile court made those findings necessary to support its judgment, provided that those findings are supported by the evidence. D.M. v. Walker Cty. Dep’t of Human Res., 919 So.2d 1197, 1210 (Ala.Civ.App.2005). The juvenile court in this case heard the testimony and observed the demeanor of the witnesses, and it determined that the Calhoun County Department of Human Resources (“DHR”) had made reasonable efforts to rehabilitate the parents, that those efforts had failed, “that the parents are unable or unwilling to discharge their parental responsibilities to and for the child,” and “that the parents are in such condition or course of conduct ... that they are unable to properly care for the child.” I would not disturb those findings.
D.M. (“the mother”) and W.A. (“the father”) each tested positive for drugs regularly between the time the child was placed in DHR custody in August 2014 and February 2015. The parents took several drug screens, but they also refused to take drug screens after a visitation, citing as an excuse that they had a job interview. The mother failed to complete a drug assessment. The father began, but did not complete, drug treatment.
The mother and the father lost their home, and each chose different living arrangements. The father admitted that DHR “didn’t know about the situation that we was in” regarding housing. At the time of trial, the mother was living with her grandfather, who had declined to be a resource for the child, and the father was living in a local Salvation Army shelter.
A lack of reliable transportation was an issue for the parents. In spite of the lack of transportation, the testimony at trial indicated that the parents routinely attended visitation with the child, even if they were sometimes late, for several months after the child entered foster care. In fact, the testimony at trial indicated that the parents attended 90% of their *856 visits. However, the mother and the father both missed all three visits in May-2015, and the father also missed one visit in June 2015.
The father’s inability to complete drug treatment appears to have been caused, in part, by the lack of transportation from his mother’s house, where he lived for a time, to the drug-treatment classes; however, the record does not reflect that he reported to DHR that his inability to secure transportation was a problem for him. In addition, he admitted that he would sometimes catch the bus or walk to the drug-treatment classes, indicating that he was able, at times, to secure transportation to the classes.
DHR is not omniscient. The parents indicated that they had not informed DHR of certain of their issues, and DHR had no way to know that the parents were unable to meet the Individualized Service Plan goals solely because of a lack of transportation when the parents did not reveal that information. The parents did not establish a stable home, they failed every drug test they were given, and they have not addressed their drug-abuse issues.
A parent’s efforts to change his or her circumstances must come to fruition in a timely manner. We have explained that a child’s need for permanency will outweigh a parent’s fruitless efforts, stating that, “[a]t some point, ... [a] child’s need for permanency and stability must overcome the parent’s good-faith but unsuccessful attempts to become a suitable parent.” M.W. v. Houston Cty. Dep’t of Human Res., 773 So.2d 484, 487 (Ala.Civ.App.2000).
“[I]n M.A.J. v. S.F., 994 So.2d 280, 291 (Ala.Civ.App.2008), this court held that the 12-month period between foster-care placement and the 12-month permanency hearing required by former Ala.Code 1975, § 12-15-62(c) [now § 12-15-315(a) ], is sufficient time within which the parents may ‘prove that their conduct, condition, or circumstances have improved so that reunification may be promptly achieved.’ In M.A.J., we further held that the circumstances of a particular case should dictate the length of the rehabilitation period allowed a particular parent. M.A.J., 994 So.2d at 291 (quoting Talladega County Dep’t of Human Res. v. M.E.P., 975 So.2d 370, 374 (Ala.Civ.App.2007)) (“ ‘[T]he point at which the child’s needs overcome the parent’s right to be rehabilitated must be determined based on the facts of each individual case.’”).”
B.J.K.A. v. Cleburne Cty. Dep’t of Human Res., 28 So.3d 765, 771 (Ala.Civ.App.2009).[1] The parents made no significant progress in the year following the removal of the child from their custody, and the termination of their parental rights was, in my opinion, warranted under the facts and circumstances of this case. Accordingly, I dissent.

. Because of the limited period during which rehabilitation should be achieved, I agree with the ideas expressed by Judge Moore in his special concurrence that a parent facing a termination of parental rights should challenge the reasonableness of efforts being made to rehabilitate him or her earlier in the process at a permanency hearing instead of waiting until the termination-of-parental-rights trial to complain that the Department of Human Resources has failed to make appropriate efforts. See-So.3d at-.