THOMAS, Judge.
On July 16, 2012, the Houston County Department of Human Resources (“DHR”) filed three petitions in the Houston Juvenile Court (“the juvenile court”) alleging that J.W.M. Ill, A.L.M., and A.J.M. (sometimes referred to collectively as “the children”) were dependent and requesting that the juvenile court terminate the parental rights of A.H. (“the mother”)- and J.W.M., Jr. (“the father”). The mother filed a petition for the return of custody of the children on September 20, 2012. A *848 hearing was held on September 24, 2012, at which the juvenile court heard evidence ore tenus. The juvenile court entered judgments declaring the children dependent and terminating the mother’s and the father’s parental rights to each child on September 26, 2012.[1] The judgments also denied the mother’s petition for return of custody of the children. The mother filed a timely notice of appeal from each judgment with this court on October 2, 2012.[2] We have consolidated the appeals.
The record on appeal is sparse regarding the details of the mother’s criminal history and her ensuing incarceration as well as the circumstances under which DHR initially became involved with the family. The record indicates the following facts relevant to these appeals. At the time of the trial, A.L.M. was 11 years old, A.J.M. was 9 years old, and J.W.M. Ill was 7 years old. The mother and the father had divorced in 2007. DHR had been involved with the mother and the children since March 2010, when the children were removed from the mother’s home. The record indicates that at some point the mother was convicted in Alabama of manufacturing methamphetamine. It is unclear whether the mother was incarcerated after that conviction. However, it is undisputed that, at the time of the trial, the mother was serving a two-year house-arrest sentence in Bonifay, Florida, where she was living at the time of the trial. The mother testified that she was initially sentenced to serve three years’ probation for assault and battery of a law-enforcement officer and for resisting arrest with violence.[3] She later violated her probation by moving her residence without notifying her probation officer; at that time, her probation was revoked, and she was sentenced to house arrest and 150 hours of community service. The house-arrest sentence is set to terminate on April 3, 2014, although the mother opined that she might be eligible for early release on April 3, 2013.
The mother admitted at trial that the children had not lived with her for 30 months. During that time, DHR had attempted to place the children with a maternal aunt, their paternal grandparents, and their maternal grandmother. At one point, the children were placed with the father; however, the father moved with the children from Alabama to Florida without informing DHR. Because the father proved uncooperative in returning the children to Alabama, DHR was forced to obtain a pickup order to retrieve the children. Alicia Anderson, the DHR worker assigned to the mother and the children, approximated that the children had been moved 10 times since August 2011.[4]
The mother admitted at trial that she had had a problem with alcohol and drugs. Anderson testified that, as part of the *849 mother’s Individualized Service Plan (“ISP”), DHR had requested that the mother complete a substance-abuse-treatment program. However, in response to questions from the juvenile court,- the mother admitted that she had not completed an inpatient or an outpatient substance-abuse program, even though a substance-abuse assessment indicated that the mother needed to complete an inpatient-treatment program. The mother further stated that she had stopped using alcohol and methamphetamine on her own without the assistance of a formal treatment program.
Anderson testified that the mother had made great strides since May 2012 toward improving her relationship with the children and cooperating with DHR. Further, according to Anderson, her supervisor had suggested to the mother that the mother should file the September 20, 2012, petition for custody of the children. Anderson also admitted, in response to examination by the mother’s attorney, that that suggestion was made to allow the mother more time to rehabilitate herself in light of the recent progress the mother had exhibited.
Anderson testified that the mother had passed three drug tests in the last six months. Anderson further testified that DHR had requested that the mother take a drug test on September 21, 2012, three days before the hearing; however, Anderson said that, although she had reported to the drug-testing facility, the mother left the drug-testing facility before completing the drug test. According to the mother, she left the facility because she had to return to her residence in Florida and did not have an adequate amount of time to complete the drug test. The mother further testified that had she remained at the drug-testing facility she would not have returned home by the time required by the conditions of her house arrest.
The mother testified that sheds currently living in a three-bedroom house that has plenty of room for the children. She also testified that, because she is currently unemployed, her family is helping her to pay for the house. The mother also admitted that she has moved 4 times in the last 30 months. The mother also testified that she had not been employed for approximately two months, that she had recently been employed cleaning condominiums in Panama City, Florida, and that that employment had ended because she did not have transportation to and- from work. Further, the mother testified that before her most recent employment she had not been employed since she was arrested on July 8, 2010. However, Rhonda Sanders, an employee of the Salvation Army in Bon-ifay, where the mother was completing her community-service hours, testified that the mother was a hard worker and dependable. Additionally, Sanders testified that the mother planned to work at the Salvation Army in the future.
It is undisputed that the mother had been exercising visitation with the children every other Friday since May 2012. Those visits were facilitated by DHR. However, there had been earlier periods when the mother did not have visitation with the children due to her incarceration. The mother had also completed anger-management and parenting classes. According to the mother, other than the missed drug test, she has complied with everything DHR has requested of her. Anderson also testified that, other than her failure to complete a substance-abuse-treatment program, the mother had complied with her ISP goals.
“Our standard of review of a judgment terminating parental rights is well settled. ‘A juvenile court’s factual findings, based on ore tenus evidence, in a judgment terminating parental rights *850 are presumed to be correct and will not be disturbed unless they are plainly and palpably wrong.’ J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1183 (Ala.Civ.App.2007). However, a trial court’s application of the law to undisputed facts is not given a presumption of correctness on appeal, and this court applies a de novo standard of review to questions of law. See J.A. v. C.M., 93 So.3d 953, 954 (Ala.Civ.App.2012).”
J.K. v. Jefferson Cnty. Dep’t of Human Res., 114 So.3d 835, 842 (Ala.Civ.App.2012).
“ ‘To terminate parental rights, the trial court must first determine from clear and convincing evidence that the child is dependent. S.F. v. Dep’t of Human Res., 680 So.2d 346 (Ala.Civ.App.1996). The trial court must then determine that there exists no alternative to termination. L.A.G. v. State Dep’t of Human Res., 681 So.2d 596 (Ala.Civ.App.1996).’
“M.W. v. Houston Cnty. Dep’t of Human Res., 773 So.2d 484, 485-86 (Ala.Civ.App.2000).”
A.K. v. Henry Cnty. Dep’t of Human Res., 84 So.3d 68, 69-70 (Ala.Civ.App.2011).
The grounds for termination of parental rights are set out in § 12-15-319, Ala. Code 1975, which provides, in pertinent part:
“(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:
[[Image here]]
“(2) Emotional illness, mental illness, or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of a duration or nature as to render the parent unable to care for [the] needs of the child.
[[Image here]]
“(12) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.”
Clear and convincing evidence is “ ‘[evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.’ ” L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002) (quoting Ala. Code 1975, § 6-ll-20(b)(4)).
The mother appears to briefly challenge the juvenile court’s findings that the children were dependent by disputing the juvenile court’s finding that she is “unable or unwilling to provide a stable home for [the children].” At trial, the mother testified that she had moved 4 times in the last 30 months. Moreover, the mother has not maintained significant employment since July 2010, and her family appears to be her only source of income. Furthermore, although the record indicates that the mother could leave her house for work if *851 she were to obtain employment, the mother is serving a two-year house-arrest sentence that is not due to terminate until April 3, 2014, although the mother avers that she might be eligible for early release on April 3, 2013.
The juvenile court had ample evidence before it to determine that the mother had not adjusted her circumstances to meet the needs of her children by her frequent moves, lack of employment, and refusal to participate in substance-abuse treatment. See § 12-15-102(8), Ala.Code 1975 (defining dependent child). Therefore, we conclude that the juvenile court did not err by finding the children dependent.
The mother next asserts in her brief that DHR did not prove by clear and convincing evidence that there were no viable alternatives to the termination of her parental rights. The juvenile court’s judgments included the following findings of fact:
“(2) That the said child is a dependent child within the meaning of Title 12-15-102 of the Code of Alabama of 1975 in that: The child is dependent on the public for support; is without a parent able to provide for the child’s support, training or education; and the mother and father have not been willing or able to discharge their responsibilities to and for said child or provide for the physical, emotional and financial needs of said child.
“(3) The parents are unable or unwilling to provide a stable home for said child.
“(4) The Department of Human Resources and this Court have considered several less drastic measures since March, 2010. The' Court finds there is no reasonable or viable alternative to the termination of parental rights.”
The mother argues that maintaining the status quo and allowing the children to remain in foster care while she completes her sentence is a viable alternative to termination of her parental rights. This court has held' that maintaining a child in foster care indefinitely while a parent attempts to rehabilitate himself or herself is not a viable alternative to the termination of parental rights. See T.L.S. v. Lauderdale Cnty. Dep’t of Human Res., 119 So.3d 431, 438 (Ala.Civ.App.2013). However, “ ‘the primary focus of a court ... is to protect the welfare of children and at the same time to protect the rights of their parents.’ Ex parte Beasley, 564 So.2d 950, 952 (Ala.1990).” Ex parte A.S., 73 So.3d 1223, 1228 (Ala.2011).
We find AS. instructive in this case. The child in A.S. was found dependent due to the mother’s incarceration; custody of the child was awarded to the child’s maternal grandmother. At the maternal grandmother’s request, the juvenile court in that case entered a judgment terminating the mother’s parental rights to the child. Id. at 1227. The evidence before the trial court indicated that the mother had maintained contact with the child during her incarceration, had sought treatment for her kleptomania, and was “apparently behaving while she [was] incarcerated because she ha[d] earned good-time credit.” Id. at 1229. This court affirmed the trial court’s judgment, without an opinion. AS. v. I.M.S. (No. 2090774, November 19, 2010), 92 So.3d 188 (AJa.Civ.App.2010) (table). Our supreme court reversed this court’s judgment affirming the trial court’s judgment terminating the mother’s parental rights because the maternal grandmother had failed to present sufficient evidence demonstrating that no viable alternative to termination of the mother’s parental rights existed. 73 So.3d at 1229.
*852 In the present case, DHR failed to present clear and convincing evidence demonstrating that the mother continues to suffer from a drug or alcohol addiction or that the mother is “unable or unwilling to discharge [her] responsibilities to and for the [children], or that the conduct or condition of the [mother] renders [her] unable to properly care for the [children] and that the conduct or condition is unlikely to change in the foreseeable future.” § 12-15-819(a), Ala.Code 1975. “This court has consistently held that the existence of evidence of cmrent conditions or conduct relating to a parent’s inability or unwillingness to care for his or her children is implicit in the requirement that termination of parental rights be based on clear and convincing evidence.” D.O. v. Calhoun Cnty. Dep’t of Human Res., 859 So.2d 439, 444 (Ala.Civ.App.2003). Although the mother had not attended a substance-abuse-treatment program, she had passed every drug test except the most recent one before trial, which she did not take due to time constraints imposed by her house arrest. Albeit with the help of her family, the mother had procured suitable housing for the children. Since May 2012, the mother has also consistently exercised visitation with the children.
“ ‘ “[T]he termination of parental rights is a drastic measure, and we know of no means by which those rights, once terminated, can be reinstated. The evidence in [this] case[] ‘does not rise to the level of being so clear and convincing as to support termination of the parental rights of the mother, such action being the last and most extreme disposition permitted by statute.’ ” ’
“D.O. v. Calhoun County Dep’t of Human Res., 859 So.2d 439, 445 (Ala.Civ.App.2003) (quoting V.M. v. State Dep’t of Human Res., 710 So.2d 915, 921 (Ala.Civ.App.1998)).”
AS., 73 So.3d at 1230. Based on the evidence in the record before this court regarding the mother’s current conditions, we cannot agree that termination of the mother’s parental rights is warranted at this time because maintaining the status quo is a viable alternative to termination under the specific facts presented in this case. Accordingly, we reverse the judgments of the juvenile court terminating the parental rights of the mother, and we remand the causes for further proceedings consistent with this opinion.
2120061 — REVERSED AND REMANDED.
2120062 — REVERSED AND REMANDED.
2120063 — REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. Separate actions relating to each child were initiated in the juvenile court. The juvenile court entered a separate judgment in each action; other than referencing a different child’s name, each judgment was identical. The judgment regarding A.J.M. was amended on October 2, 2012, in order to correct a clerical error.

. The father did not appear at the trial; the father's attorney appeared before the juvenile court on the father’s behalf. The father did not appeal the termination of his parental rights to the children.

. The underlying infraction for which the mother was arrested is not readily apparent from the record.

. DHR attempted to maintain the placement of the children with the father in Florida. However, Anderson stated that Florida authorities objected to the placement, citing violations of Florida policy and the Interstate Compact on the Placement of Children.